IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BRENDA DARLENE DEWITT, ) | Civil Action No. 3:11-3395–MGL-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rule 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on July 20, 2009, alleging disability as of July 7, 2009. Tr. 112-113. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 11, 2011, at which Plaintiff appeared and testified. On July 22, 2011, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was fifty-three years old at the time of the ALJ's decision. She has a high school education and past relevant work as a bank teller. Tr. 34, 41, 146. Plaintiff alleges disability due

to back disorder, cardiac disorder, chronic obstructive pulmonary disease ("COPD"), depression, and panic disorder.  See Tr. 141, 176-177.

The ALJ found (Tr. 18-24):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engage in substantial gainful activity since July 7, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: back disorder, cardiac disorder, COPD, depression and panic disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours and sit about six hours in an eight hour workday.  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to respiratory irritants, dangerous machinery, and unprotected heights.  She retains the ability to concentrate, persist, and work at pace to perform simple routine repetitive tasks at level three reasoning per the DOT for extended periods of two hours in an eight-hour workday, interact occasionally with the general public, and interact appropriately with coworkers and supervisors, in this type of stable routine setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 13, 1958, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date of this decision, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2009, through the date of this decision (20 CFR 404.1520(f)).

The Appeals Council denied Plaintiff's request for review on June 28, 2011. Tr. 1-5. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on December 14, 2011.

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Beginning in 2006, Plaintiff sought treatment with Dr. Peter Owens (a psychiatrist) for mental health issues from approximately April 2006 to November 2008, and again from February 2010 to February 2011.[1] See Tr. 195-202, 192-203.

On April 4, 2007, Dr. Owens wrote a note that Plaintiff was released to return to work from 10:00 a.m. to 3 p.m. Tr. 203. Plaintiff was seen at Peace Internal Medicine and Cardiology Center ("PIMCC") with complaints of cough and a sore throat on July 26, 2008. Plaintiff reported that she smoked cigarettes. Pharyngitis, acute viral sore throat, and nausea were diagnosed, and medications were prescribed. Plaintiff was advised to stop smoking. Tr. 254-256.

On August 12, 2008, Dr. Vinita Srivastava (of the PIMCC) treated Plaintiff with medications for hypertriglyceridemia, hyperlipidemia, gastroesophageal reflux disease ("GERD"), and back muscle spasms. Tr. 257-259. Plaintiff returned to see Dr. Srivastava on January 21, 2009. Plaintiff reportedly had smoked for twenty to twenty-five years, and was currently smoking a pack a day. Dr. Srivastava diagnosed worsening COPD; improved hyperlipidemia; unchanged anxiety/depression, pelvic arthralgia, and cervicobrachial syndrome; recurrent lumbalgia; and new onset of osteopenia. She advised Plaintiff to stop smoking, advised Plaintiff about a GERD prevention diet, and prescribed medications. Tr. 262-265.

On January 27, 2009, Plaintiff underwent an exercise stress test/nuclear scan study which was normal. Tr. 272-273. She also underwent an echocardiogram study that showed "mild" mitral and tricuspid valve regurgitation, but otherwise normal findings. Tr. 274-275. On May 12, 2009, Plaintiff underwent a lumbar spine CT scan that showed severe L5-S1 degenerative disc disease. Tr. 284.

---

[1]Portions of these notes are illegible.

On July 6, 2009, Dr. Srivastava prescribed medications for Plaintiff's maxillary acute sinusitis and bronchitis. Tr. 289-291. On September 20, 2009, Dr. Srivastava prescribed medications for Plaintiff's acute sinusitis, cough, and headache. Tr. 292-294.

In October 2009, Dr. Srivastava found Plaintiff had clear lungs and normal respiratory effort. Dr. Srivastava diagnosed worsening anxiety/depression, GERD, and neck stiffness, but improved hyperlipidemia. Medications, including Paxil (an antidepressant) and Flexeril (a muscle relaxant), were prescribed.. Tr. 295-297. Plaintiff underwent a pulmonary function test that showed pre-bronchodilator FVC (force vital capacity) of 2.52 and FEV1 (forced expiratory volume ) of 1.77. Tr. 204-207.

On November 12, 2009, Dr. Carl Anderson, a state agency physician, reviewed the evidence and completed a Physical Residual Functional Capacity ("RFC")Assessment. He opined that Plaintiff could perform light work that did not require climbing of ladders, ropes, or scaffolds or more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling. He also opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.). Tr. 208-215.

On November 13, 2009, Dr. Xanthia Harkness, a state agency psychologist, reviewed the evidence and completed a Psychiatric Review Technique form. She opined that Plaintiff did not have a "severe" mental impairment. Tr. 216-229.

Plaintiff was treated by Dr. Srivastava on December 9, 2009, for complaints of body aches, headaches, earaches, coughing, congestion, sinus drainage, weakness, dizziness, body soreness, chills, and hot flashes. Examination showed she had inflamed ear drums, tender sinuses, and

moderate erythematous oropharynx. Tr. 298-300. The following day, Plaintiff underwent a chest x-ray, which was normal. Tr. 303.

On December 16, 2009, Plaintiff returned to Dr. Srivastava with complaints of increased stress and nervousness. Dr. Srivastava diagnosed worsening anxiety/depression, and GERD, but improving hypertriglyceridemia, hyperlipidemia, sinusitis, bronchitis, cough, and hyperglycemia. Medications, including Paxil, were prescribed. Tr. 301-302.

Plaintiff saw Dr. Peter Owens, a psychiatrist, on February 9, 2010, with complaints of low back pain and mood swings after losing her job. Dr. Owens prescribed medications, including Paxil. Tr. 349.

On March 17, 2010, Plaintiff complained of stomach and sinus pain and unimproved depression to Dr. Srivastava. Dr. Srivastava stated Plaintiff's hypertriglyceridemia was worsening, but her hyperlipidemia and hyperglycemia were improved. She diagnosed Plaintiff with bipolar disorder and improved diabetes. She noted Plaintiff's tobacco dependence was unchanged and recommended smoking cessation. Dr. Srivastava prescribed medications, including Valium (an anti-anxiety medication). Tr. 309-311.

Plaintiff underwent an echocardiogram study on April 2, 2010, that showed "mild" mitral and tricuspid valve regurgitation, but otherwise normal findings. Tr. 304-305. She also underwent a chest CT scan, which was normal. Tr. 306. On April 9, 2010, Dr. Srivastava diagnosed worsening anxiety/depression and lumbalgia, with tachycardia improving with medications. Dr. Srivastava prescribed medications and recommended smoking cessation, which Plaintiff stated she was not ready to consider. Tr. 312-313.

On May 11, 2010, Dr. Srivastava diagnosed Plaintiff with B12 or folic acid deficiency, controlled tachycardia, and hyperkeratosis. Medications, including Lortab (a narcotic) and Flexeril, were prescribed. Tr. 314-316. On May 19, 2010, Dr. Srivastava treated Plaintiff for bronchitis, sinusitis, cough, nausea, lung congestion, and joint pain with medications. Tr. 319-320.

On July 1, 2010, Plaintiff told Dr. Srivastava's office that she underwent back surgery several years prior with "partial disc removal" and requested forms so she could "get disability." Dr. Srivastava found Plaintiff had clear lungs and normal respiratory effort. Plaintiff also had paraspinal muscle tenderness, but intact gait and normal posture. Tr. 321-325. On August 20, 2010, Plaintiff saw Dr. Srivastava to get a report for disability. She complained of difficulty hearing, as well as right hip, right leg, back, and neck pain. Dr. Srivastava diagnosed worsening COPD and lumbago and prescribed Paxil. Tr. 326- 329. Plaintiff underwent a full physical examination by Dr. Srivastava on August 30, 2010. Dr. Srivastava found Plaintiff had decreased breath sounds bilaterally and abdominal tenderness. Plaintiff had lumbar spinous process tenderness, but intact station, normal posture, and intact neurological functioning. Dr. Srivastava again advised Plaintiff to stop smoking and prescribed medications, including Valium and Flexeril. Tr. 330-335.

On December 3, 2010, Plaintiff presented to Dr. N. Gupta (at the Center for Rehabilitation and Pain Management) for low back and neck pain. Dr. Gupta found she was in no distress, and had no significant abnormalities of the neck or left shoulder. She had normal neurological functioning, normal lumbar spine range of motion, and no other peripheral joint abnormalities. Dr. Gupta prescribed Lortab and diagnosed Plaintiff with chronic neck, shoulder, and low back pain. Tr. 354-355. On December 23, 2010, Plaintiff reported that Lortab reduced her pain. It was noted that Plaintiff was in no distress, had a normal gait and neurological functioning, and had no significant

musculoskeletal abnormalities. Dr. Gupta diagnosed chronically depressed mood and continued Plaintiff's medications. Tr. 353.

On January 26, 2011, Plaintiff reported increased back and lower extremity pain. Dr. Gupta again found she was in no distress. Examination revealed that Plaintiff had limited lumbar spine range of motion, no paraspinal tenderness upon palpation to the cervical or lumbar spine, and normal peripheral joints and neurological functioning. Tr. 352.

On February 20, 2011, Dr. Owens completed a Psychiatric/Psychological Impairment Questionnaire. He stated he first saw Plaintiff in April 2006 and most recently treated her in February 2011. Dr. Owens's diagnoses included recurrent depression and panic disorder, and he assigned a GAF score of 60.[2] He thought that Plaintiff's prognosis was guarded. He noted that she had depressive symptoms, but required no hospitalizations. Dr. Owens opined that Plaintiff was "markedly limited" in her abilities to work in coordination with or in proximity to others without being distracted by them. He thought that Plaintiff could complete a normal work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and travel

---

[2]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

to unfamiliar places or use public transportation. Dr. Owens also opined that Plaintiff was "moderately limited" in her abilities to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in a work setting. He thought that Plaintiff was capable of low stress jobs if her panic attacks were managed and she would miss work more than three times a month. Dr. Owens opined that the earliest date that the description of Plaintiff's limitations applied was "one year." Tr. 340-345, 356-357.

On February 21, 2011, Plaintiff complained to Dr. Owens of insomnia and low back pain. He prescribed Paxil. Tr. 338-339, 346.

Dr. Gupta noted on February 21, 2011that Plaintiff was in no distress and had a normal gait. Although she had limited lumbar spine ranges of motion, Plaintiff had normal neurological functioning, no spinal or paraspinal tenderness, and no other significant abnormalities. In February 2011, CT scans of Plaintiff's cervical and lumbar spines revealed degenerative disc disease at L5-S1 with no other significant abnormality. EMG/nerve conduction studies of Plaintiff's lower extremities were normal. Tr. 351. On April 1, 2011, Plaintiff told Dr. Gupta that Lortab helped manage her pain. Dr. Gupta again found she was in no distress and had a normal gait. She had limited lumbar spine ranges of motion, but no focal motor or sensory deficits. Dr. Gupta prescribed Lortab. Tr. 350.

## **HEARING TESTIMONY**

Plaintiff testified that she was fired from her job on July 9, 2009 due to frequent absences because of back pain and her mental status. Tr. 34. She stated that, during an average day, she got

her daughter up, fixed breakfast, and drove her daughter to school. Tr. 35. Plaintiff was able to clean her home sufficiently, but experienced back pain at times. She stated she had to lie down five to six hours per day. Tr. 36. Plaintiff testified her pain medications made her sleepy, but she could care for her personal needs. Tr. 37. Plaintiff stated that she received unemployment benefits through 2010, but felt she was unable to work after that time because she did not think she could be a dependable employee. Tr. 44-45. She said she had a small vegetable garden with tomatoes, cucumbers, okra, and green beans, which she planted herself. Tr. 45-46. Plaintiff stated she took care of her four cats, she prepared meals and shopped for groceries. Tr. 46-47. Plaintiff testified she used a riding lawnmower to mow her lawn. She reported she recently quit smoking. Tr. 50.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred: (1) in evaluating her mental RFC and the opinion of her treating psychiatrist; (2) in evaluating her credibility; and (3) in posing an incomplete hypothetical to the VE. The Commissioner contends that the final decision that Plaintiff is not disabled is supported by substantial evidence[3] and correct under controlling law.

Plaintiff contends that the ALJ failed to properly evaluate her mental impairments because he failed to cite any medical evidence to support his mental RFC finding. She also argues that the ALJ failed to properly weigh the opinion of her treating psychiatrist (Dr. Owens), including that he

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

failed to apply the required factors of 20 C.F.R. § 404.1527(d)(2)-(6). Plaintiff argues that Dr. Owens' opinions were supported by appropriate clinical and diagnostic psychiatric techniques, and are uncontradicted by any other medical opinion.[4] The Commissioner argues that the ALJ properly discounted the opinions of Dr. Owens because they were largely in a check-the-box form, were inconsistent with his own treatment notes and the record as a whole including Plaintiff's activities of daily living, were inconsistent with receipt of benefits, and were not supported by a GAF of 60 which indicated only moderate symptoms. Additionally, the Commissioner contends that the ALJ was not required to include an explicit discussion of each factor under 20 C.F.R. § 404.1527(c).[5]

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

---

[4]Plaintiff also argues that the ALJ erred in rejecting Dr. Owens' opinion based on his GAF score of 60 (claiming such a score is not inconsistent with a finding of disability), her application for unemployment benefits (claiming receipt of benefits does not preclude a disability finding), and that the doctors's report was provided in a form at the request of Plaintiff's counsel (claiming that the Commissioner actively encourages the Commissioner to obtain opinions in a similar form to that provided by Dr. Owens).

[5]Until March 2012 (and at the time of the ALJ's decision), this regulation was 20 C.F.R. § 404.1527(d). In March, the regulation was modified and is now § 404.1527(c). There was no substantive change. See 77 Fed. Reg. 10,651-01, *10,656 (Feb. 23, 2012).

11

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. § 404.1527(c)(2)[6]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(c).  Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p.

It is unclear from the ALJ's decision how he determined Plaintiff's mental RFC.  The ALJ rejected the opinion of Plaintiff's treating psychiatrist Dr. Owens.  He also gave little weight to the opinion of State agency psychologist Dr. Harkness (who found that Plaintiff's mental impairments were non-severe), as additional evidence was received after that assessment was made (in November

---

[6]Formerly 20 C.F.R. § 404.1527(d)(2).

2009).[7] Tr. 22. Although the ALJ noted that Dr. Srivastava on one occasion provided medications for anxiety and depression (Tr. 18-19), the record reveals that Dr. Srivastava diagnosed anxiety and depression on numerous occasions, diagnosed worsening anxiety and depression in October and December 2009, diagnosed bipolar disorder in March 2010, and prescribed medications on other occasions. See Tr. 264, 296, 302, 310, 313, 326, 333. Dr. Gupta also assessed Plaintiff with chronically depressed mood in December 2010, and chronically depressed and anxious mood in January 2011. Tr. 352-353. It is unclear from the ALJ's decision whether this evidence was fully considered and how it is inconsistent with Dr. Owens' opinions.

Additionally, it is unclear that the ALJ properly weighed the opinions of Plaintiff's treating psychiatrist, Dr. Owens. The ALJ discounted Dr. Owens' opinions in part because Dr. Owens' articulated limitations on Plaintiff's ability to work were inconsistent with his treatment notes. See Tr. 20. As noted by the ALJ (Tr. 19), however, Dr. Owens' notes are difficult to read. Plaintiff argues that there is no reason to believe that Dr. Owens' opinion is incompatible with his illegible treatment notes, asserting that if the ALJ believed clarification was necessary, he had an affirmative duty to develop the record and request such clarification and supplementation of the record. The Commissioner has not addressed this argument.

An ALJ is only required to recontact a physician if the evidence before him is inadequate to make a determination. See 20 C.F.R. §§ 404.1512(e).[8] "[T]hese regulations impose a duty to

---

[7]On June 30, 2010, Dr. Debra Price, a state agency psychologist, found there was "insufficient evidence" to rate Plaintiff's limitations due to mental impairments. Tr. 232-245.

[8]At the time of the ALJ's decision, this section provided, in part:
(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine
(continued...)

13

recontact a treating physician only when the record is inadequate to make a determination of disability." Jackson v. Barnhart, 368 F.Supp.2d 504, 507, n. 1 (D.S.C. 2005); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205 (3d Cir. 2008)(noting the regulation's "important prerequisite" that a medical source will be recontacted for clarification if the evidence available is inadequate for Agency to determine whether claimant is disabled); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)(finding duty to recontact "only when the evidence received is inadequate" to make a disability determination); Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)(requiring recontact when the ALJ was faced with "an incomplete medical history"); Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999)(the ALJ is obligated to develop a claimant's medical history "where there are deficiencies in the record").

Because the undersigned finds that the ALJ's failure to properly analyze Plaintiff's mental RFC and the opinion of treating physician Dr. Owens are sufficient reasons to remand the case to the Commissioner, the undersigned declines to specifically address Plaintiff's additional allegations

---

[8](...continued)
whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
    (1)    We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e). Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 to remove former paragraph (e) and the duty it imposed on ALJs to recontact a disability claimant's treating physician under certain circumstances. See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651-01, *10655 (Feb. 23, 2012).

of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine Plaintiff's RFC and evaluate the opinions of Plaintiff's treating physician Dr. Owens in light of all of the evidence (including recontacting Dr. Owens) and applicable law, and to consider Plaintiff's remaining allegations of error.

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

                                                Joseph R. McCrorey
                                                United States Magistrate Judge

February 21, 2013
Columbia, South Carolina